IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>UNITED STATES OF AMERICA</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>No. GLR-19-318</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>BRANDON CRAWFORD, et al.</td><td></td><td></td></tr>
<tr><td>(Def: MICHAEL MERCER)</td><td>*</td><td></td></tr>
</table>

*     *     *     *     *     *     *     *     *     *     *     *     *

**MOTION TO REQUIRE PROSECUTION
TO REVIEW AND CONFIRM WITNESS BACKGROUNDS**

Comes now the Defendant herein, Michael Mercer, through counsel, Michael D. Montemarano, Esq., and Michael D. Montemarano, P.A., court-appointed counsel pursuant to the CJA, and in order to allow Mr. Mercer  the opportunity to file appropriate pretrial motions, hereby moves this Court to enter an Order directing, requiring and compelling the prosecution to verify to the Court and the defense that it has properly, adequately and thoroughly vetted its prospective law enforcement witnesses, cooperators and experts, and has thereby confirmed their backgrounds, qualifications, honesty and other pedigree information, and further has provided all necessary and required background information relative thereto as required by F.R.Cr.P. 16, in particular expert witness materials, and in support thereof does state as follows:

The genesis of this motion is found decades ago, in the discomfiting discovery of continued and ongoing fraud that repeatedly was perpetrated upon the state and federal courts in this district over the course of nearly thirty years by Joseph Kopera, a former employee of the Baltimore City Police and Maryland State Police, without the discovery or amelioration thereof by any prosecutorial or law enforcement agency.  This is an occurrence which we now know is neither unique nor uncommon; similar expert witness issues have arisen in many states, including

more recently North Carolina, Illinois, West Virginia, Texas, Oklahoma, Arizona, Massachusetts and Colorado, along with the federal government, at the least.  Notwithstanding this matter having come to light in many states, there apparently has been no systematic attempt to address the potential for this kind of problem.  Continued factual developments augur further supplements to this Motion.

       An issue arose in the Massachusetts State Police crime lab involving 40,323 criminal cases over a course of seven years, with over 300 persons having been released, and an estimate of over 2,000 persons wrongfully imprisoned.  This has led to a jail sentence for two chemists for "drylabbing" (writing reports without testing drug samples) and the resignation of other employees and at least one  prosecutor.  There is at least the suggestion that knowledge of this was widespread within state law enforcement, and systematically ignored.  The effect of this has stretched as far as the federal courts in Massachusetts. *See*

http://www.boston.com/news/local/

massachusetts/2013/09/16/dookhan-drug-lab-scandal-making-its-way-into-federal-court-system-massachusetts/sbEaRc2rFXhjuX8z098LNI/story.html.  *See also* http://cache.boston.com/news/ pdfs/druglabreport.pdf.  *See* Evan Allen, State chemist may have affected more drug cases than previously known,  https://www.bostonglobe.com/metro/2015/07/02/state-chemist-drug-thefts-may-have-affected-thousands-cases/h6b7vvPYoNCsAJTLMGbrBK/story.html.  This ultimately resulted in the outright dismissal by the state in 2017-18 of over twenty five thousand (25,000) drug case convictions, https://www.bostonglobe.com/metro/2017/04/18/prosecutors-file-lists-thousands-dookhan-cases-for-dismissal/VTLYebLQ1BbtyQOyJmENoI/story.html, including in this the subsequent dismissal later in 2017 of over 6,000 cases by local prosecutors.

https://www.bostonglobe.com/metro/2017/11/30/more-than-drug-cases-dismissed-after-

misconduct-chemist-and-former-prosecutors/C9cWcNDn34axTv8mXRLB9O/story.html.  More

troubling, the ongoing investigation has revealed evidence that two attorneys in the

Massachusetts attorney general's office withheld evidence and perpetrated a "fraud upon the

court," in the words of a Springfield judge.  http://eye.necir.org/2016/05/28/farak-withheld-

evidence.

In March, 2013, the report of an investigation of the the Colorado state toxicology

laboratory revealed that designated procedures had not been followed, requiring retesting of

many samples.

More recently, serious questions have arisen concerning the erratic conduct of

Michelle Yezzo, a forensic scientist working for the Bureau of Criminal Investigations of the

Ohio Attorney General, regarding her testimony over three decades of serious cases, including

capital prosecutions, but for which an internal review produced nothing.  At least one conviction

already has been set aside, with many more under scrutiny  – scrutiny which resulted only from

detailed review by defense counsel of the expert's background.

http://www.dispatch.com/content/stories/local/2016/10/30/ex-bci-scientists-problems-may-cast-

doubt-on-dozens-of-cases.html.  Such review has twin poles  – time and information, and this

*Motion* seeks both.

Nor is this unique to state criminal justice systems, as in 2013 the FBI interceded

to delay the execution of an inmate in Mississippi, due to fraudulent and false testimony by its

hair examiners at his trial, which intercession was a part of an ongoing investigation by the FBI

into its forensic practices.  "With Hours to Go, Execution is Postponed," *New York Times,* May

3

7, 2013, at (http://www.nytimes.com/2013/05/08/us/willie-j-manning-Harted-stay-of-execution.html?_r=0).

In June, 2016, the DOJ belatedly circulated new proposed guidelines for expert witness testimony and lab reports by federal agents.  https://www.justice.gov/opa/pr/justice-department-issues-draft-guidance-regarding-expert-testimony-and-lab-reports-forensic.  This is another explicit acknowledgment of prior failures in procedure and substance, leading to due process violations on the part of the government.

Likewise, the Florida Supreme Court reversed a capital conviction in 2013, on actual innocence grounds, due to expert testimony regarding evidence which did not exist.  *State v. Swafford,* http://www.floridasupremecourt.org/decisions/2013/sc10-1772.pdf.  The Texas Forensic Science Commission issued a report (the Blazek Report) in the spring of 2016, in response to a complaint by and attorney concerning  a firearms examiner in a capital case, which contained a finding of professional negligence by the examiner, and inadequate safeguards  to ensure the legitimacy of his testing and testimony.

Of course, the FBI's issues extend beyond forensic science, as the recent conviction in United States District Court in the District of Columbia of a sworn FBI agent, SA Matthew Lowry, on 64 separate counts involving misconduct in office and theft of narcotics over a course of years.  The USAO in Washington, DC, dismissed charges against 28 defendants  – 14 of whom had plead guilty and been sentenced – due to this course of misconduct by SA Lowry, which only came to light after SA Lowry was discovered under the influence of narcotics while on duty.  According to news reports, the Maryland USAO undertook review of its cases, since SA Lowry was assigned to a task force that also worked cases in this District.  "Prosecutors in

4

Maryland, Virginia, reviewing cases amid investigation of FBI agent."  Washington Post,

November 6, 2014, (at http://www. washingtonpost .com /local/crime/prosecutors-in-maryland-

virginia-reviewing-cases-amid -investigation-into-fbi-agent/ 2014/11/06/

e227d954-65b3-11e4-bb14-4cfea1e742d5_story.html?hpid=z4.)

   The problems in the FBI are not of recent genesis, any more than this sort of

lengthy and ongoing misconduct is limited solely to the realm of expert witness testimony.  One

cannot but remember the revelation of a years-long conspiracy in the Boston office of the FBI to

cover up murders by police informants led to the wrongful incarceration of individuals whom

law enforcement knew to be actually innocent, leading to a multi-million dollar civil settlements

and criminal charges against FBI agents, now memorialized in a major motion picture.  There

have been – and continue to be – as well as repeated instances of withholding of evidence by

government attorneys which should have been disclosed by them, which has led to mistrials.

This form of misconduct has not taken place solely in the context of career criminals, gang

prosecutions and terrorist incidents like Oklahoma City, but also has extended to the prosecution

of members of the Senate, *e.g.,* the late Sen. Ted Stevens (R-AK).

   Withholding of *Brady* appears to be endemic, or more correctly "epidemic."

*United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, J., dissenting from denial of

rehearing en banc) ("an epidemic of *Brady* violations abroad in the land").  A former Texas state

prosecutor – now a judge -- entered a guilty plea  requiring a jail sentence and disbarment for his

withholding of evidence in a murder case, http://www.nytimes. com/2013/11/09/opinion/

a-prosecutor-is-punished.html.  Similarly, the Florida Supreme Court referenced the withholding

of *Brady* material in its opinion in *Swafford, supra.* Likewise, defendant Debra Milke was

released after 23 years on death row as a result of the discovery of the serial perjury by the investigating detective, who had claimed that she had confessed. *Milke v. Ryan,* 711 F.3d 998, 1002 (9th Cir. 2013). Likewise, investigation in the capital case in California of Scott Dekraai revealed an ongoing and institutionalized withholding of evidence and creation of jailhouse snitch testimony by the organs of law enforcement in Orange County, CA, and serial perjury concerning this by law enforcement agents in an attempt to cover it up. This parallels the view of a distinguished commentator, that the criminal justice system in Louisiana seems congenitally incapable of even recognizing the issue when it arises, http://www.huffingtonpost.com/bennett-l-gershman/correcting- prosecutorial-_b_10065774.html.

Of course, Dekraai had the death penalty stricken from his trial, and both Milke and Swafford were released, albeit after years behind bars. Such isolated remedies often lead prosecutors to claim "the system works." This is a more difficult proposition to sustain in light of the prosecutor in Texas who has been the subject of a complaint by the Texas Bar regarding his conduct in the capital prosecution of Cameron Willingham, regarding the withholding of *Brady* and *Giglio* materials. *See* http://www.washingtonpost.com/national/ prosecutor-in-texas-execution -case-accused -of-misconduct/ 2015/03/18/e4e19b8c-cdcb-11e4-8730-4f473416e759_story.html. Regardless of the outcome obtained through "the system," Mr. Willingham long has been dead, executed while maintaining his innocence at every step.

The drumbeat of misconduct continues apace, and not just in Texas. During oral argument in February, 2015, the Ninth Circuit essentially dared the Attorney General of California to defend this exact sort of misconduct of prosecutors and risk a published opinion

6

regarding these prosecutors.  *Baca v. Adams,* No. 13-56132 (February 8, 2015).  *See* http://www.latimes.com/ local/politics/la-me-lying-prosecutors-20150201-story.html#page=1. This is separate and apart from the aforementioned cover-up in Dekraai's case in of the misuse by the district attorney over a period exceeding a decade of a group of serial jailhouse snitches, who repeatedly testified against defendants, but whose direction, history and benefits then were withheld from the defense, the investigation of which practice has led to members of the Orange County sheriff's office refusing to testify on the advice of counsel, as revealed by counsel for Dekraai.  The entire Orange County District Attorney's office was disqualified by the trial judge, a decision upheld on appeal.

In this district, the failure of the United States Attorney's Office to vet its witnesses has led to the separate prosecutions of corrupt Baltimore police officers within the past few years,[1] all of whom previously were witness for the USAO in criminal prosecutions, and the grant of habeas relief to criminal defendants based upon the nondisclosure by the USAO of such witness misconduct.  *See United States v. Fisher,* 711 F.3d 460 (4th Cir. 2013).  The post-trial confirmation of egregious perjury during testimony by government cooperating witnesses in this District, in a case seeking a life sentence under 21 USC § 851, has led to the *vacatur* of a jury verdict of guilt and retrial of the defendant.  *United States v. Dexter Tyson*, CCB-03-056, ECF 171, 172, 173.  This problem continues, unabated, regardless of the number of police involved,

---

[1]  Undersigned counsel must note that earlier iterations of the instant motion, as filed in other, earlier, cases before this Court, referenced no BPD officers. With the count now over two dozen sworn BPD officers, it cannot be known how many more times counsel will be required to either to update this motion or retain Sisyphus as co-counsel.

as the recent experience of Baltimore Police Department Ofr. Ramon Lugo makes clear.[2]

In a recent case, the government's failure to vet a criminal/witness led to the grant of a new trial to several defendants, when it turned out that *Brady* material which had not been disclosed likewise had not been reviewed with the witness, a necessary step to establishing his *bona fides*. *United States v. Cannady, et al.*, No. RDB-14-389 , ECF 373, 403.

Were this not enough, now we have seen the Honorable Richard D. Bennett recently coming off of the bench to apologize to a wrongly convicted and imprisoned individual, Umar Burley, who was convicted on the basis of the testimony by police officers then prosecuted for racketeering by the USAO – the same office which put Mr. Burley in federal prison using the testimony of these particular officers.  Irony abounds, as six of the indicted police officers plead guilty, and the other two were convicted by a jury on all counts.  *United States v. Gondo, et al.,* No. CCB-17-106.  This is not surprising, as dozens of BPD officers previously have been convicted of major crimes related to their official duties.  *See United States v. King, et al.*, No. JFM-05-203 (two officers); *United States v. Moreno Mejia, et al.*, No. CCB-11-122 (18 officers found or plead guilty).

Such misconduct is not limited to sworn officers of the BPD, as Staccato Butler, an employee serving as a forensic analyst in the Cyber Crimes Unit had forged his credentials and was unqualfied to undertake the testing and offer the opinions he had testified to for over 30

---

[2]  This form of misconduct was seen in the testimony of BPD Ofr. Ramon Lugo, who testified about observations he made, and which he incorporated in an affidavit of probable cause, on a date and time when he was not on duty.  At a *Franks* hearing, Judge Russell indicated that his view was that the detective was "bordering very close to admitting he perjured himself in an affidavit."  *United States v. Devin Jones*, GLR-13-394 (ECF #54-55, March 10-11, 2014). The case against Mr. Jones was dismissed.

years.

It therefore is plain, the defense submits, that the government cannot be entrusted with the sole duty of ensuring the accuracy and completeness of the backgrounds and qualifications of the government's witnesses, witnesses who have not yet even been identified to the defense and whom the defense cannot begin to investigate, and this Court must take an active role to ensure a fair trial for the defense.  Unless the defense is accorded sufficient additional time not apparent within the trial schedule, or the prosecution is compelled to fill in this deficit, the defense cannot know if the alleged backgrounds and qualifications regarding government witnesses are indeed as they may choose to testify, or if the deception extends to pulling the wool over the eyes of the prosecution, an exercise in which the government has been participatory in the past, as found by a myriad of federal and state courts.  Since injustice may be wrought without the active connivance of the government, the defense submits as an initial step that the Court must obligate the prosecution to move proactively and to vet its witnesses, and to confirm this to the Court and to the defense that the witnesses are as they claim, and to do so well in advance of the time set for the mere identification of such witnesses to the defense.

Pursuant to this request, the defense moves that the prosecution be obligated to review the personnel and internal affairs/internal investigation/disciplinary files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, or persons who may have had substantial contact with and influence upon witnesses in this matter, including testifying officers and agents who may have been controlling or contacting any confidential informants or cooperators in this matter, and to review the prior conduct of such witnesses, including their prior testimony.  Mr. Mercer  requests that these

9

materials be reviewed by the government attorney for *potential* evidence of perjurious conduct or other like dishonesty, for complaints or sanctions imposed for failure to abide by policies instituted by their employees, and for their reputed or claimed qualifications and educational and training backgrounds, to ensure that qualifications as claimed by the witnesses are indeed accurate and complete, and for any contradictory information regarding or any other material relevant to impeachment, or any information that is exculpatory.  Mr. Mercer  further requests that the government be obligated to undertake a review of the mental health, educational, juvenile and other records of any alleged minor victims.

This is all the more necessary in light of the plain issues relating to knowledge and veracity already noted to this Court's attention in the defense motions.  The defense submits that the prosecution must undertake this pursuant to its duty under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *United States v. Kiszewski*, 877 F.2d 210, 216 (2nd Cir. 1989) (*in camera* review of agent's personnel file necessary regarding bribery allegations).  The defense submits that as a part of this obligation, the prosecution must review the educational and professional background and qualifications of all of its expert witnesses, especially in light of recent developments in this and other jurisdictions regarding nonexistent, overblown and falsified expert qualifications, and this necessarily must extend to affirmatively reviewing records brought to its attention by the prior conduct of any witness, now that it is on notice.

The defense submits that an obligation to examine files on the part of the government arises by virtue of the defense making a demand for their review:  the Ninth Circuit in *Henthorn, supra,* remanded for in camera review of the agents's files because the prosecution failed to examine the files of agents who testified at trial.  The defense also notes that although

the Ninth Circuit in *United States v. Jennings,* 960 F.2d 1488, 1492 (9th Cir. 1992), refused to require the prosecutor to personally review each file, it did reaffirm the prosecution's affirmative duty to inspect these files and to be aware of the matters underlying this defense request.

The defense further submits that, pursuant to *Spicer v. Roxbury Correctional Institution*, 194 F.3d 547 (4th Cir.1999), prior inconsistent statements of government witnesses, and other materials which demonstrate such inconsistencies, must be disclosed immediately to the defense, as such items constitute *Brady* material.   This includes inconsistent statements by cooperators, as well as inconsistent attorney proffers in cooperation cases.

WHEREFORE, for the foregoing reasons, Defendant Michael Mercer respectfully requests this Honorable Court to direct, require and compel the prosecution to verify that it has undertaken an independent verification of the background, qualifications and honesty of its law enforcement, cooperator and expert witnesses, of their compliance with departmental policies and procedures, and to provide to the defense any materials bringing into question any of the aforesaid matters.

Respectfully submitted,

Date: October 21, 2020                    _____/s/_____
                                          MICHAEL D. MONTEMARANO

                                          Law Offices of Michael D. Montemarano, P.A.
                                          3826 Paul Mill Road
                                          Suite 204
                                          Ellicott City, Maryland  21042
                                          (410) 992-0067/Fax (443) 663-3002
                                          Counsel of Record/CJA Counsel

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or before this 21st day of October, 2020, a copy of the foregoing

(1) *Motion to Require Prosecution to Review and Confirm Witness Backgrounds*;

was filed via CM/ECF, and/or served as well via direct email, on Matthew DellaBetta, Esq., Assistant United States Attorney, Office of the United States Attorney, 36 South Charles Street, 4th Floor, Baltimore, MD 21201.

_____/s/_____
MICHAEL D. MONTEMARANO
